**IN THE UNITED STATES DISTRICT COURT**
**STATE OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| BRIAN CRAIG, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>XLEAR, INC. a Utah corporation; and NATHAN JONES, an individual,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING MOTION TO EXCLUDE EXPERT REPORT AND TESTIMONY OF TAD MANCINI (ECF NO. 69) AND GRANTING MOTION TO EXCLUDE EXPERT REPORT AND TESTIMONY OF MARK ANDERSON (ECF NO. 70)**<br><br>Case No. 2:16-cv-00392-DB-EJF<br><br>District Judge Dee Benson<br><br>Magistrate Judge Evelyn J. Furse |

Before the Court are Plaintiff Brian Craig's Motion to Exclude Expert Report and Testimony of Tad Mancini (ECF No. 69) and Motion to Exclude Expert Report and Testimony of Mark Anderson (ECF No. 70). On September 26, 2018, the District Judge referred these Motions to the undersigned for decision, (ECF No. 101), and on November 5, 2018, the Court held a hearing on the Motions (ECF No. 103).

Counsel for Defendants Xlear, Inc. ("Xlear") and Nathan Jones retained as an expert Tad Mancini, a food broker, "to provide an analysis of Brian Craig's ("Mr. Craig's") actions as it relates to his fiduciary obligations while managing Xlear sales and relationship with brokers." (Ex. 1 to Mot. to Exclude Expert Report & Testimony of Tad Mancini ("Mancini Mot."), ECF No. 69, Tad Mancini Expert Witness Report ("Mancini Report"), ECF No. 74-1 at 3–5.)[1] Mr. Craig moves to exclude Mr. Mancini's Report and

---

[1] The Report at ECF No. 69-1 is redacted in its entirety so the Court cites to the sealed version at ECF No. 74-1.

testimony on the grounds (1) that his opinions improperly state legal conclusions, (2) that Mr. Mancini lacks the qualifications to offer opinions in this case, (3) that his opinions are unreliable, and (4) that Mr. Mancini's opinions on "mass market" damages are irrelevant.   (Mancini Mot. 1–2, ECF No. 69.)

Xlear also retained as an expert Mark Anderson, a certified public accountant, "to provide opinion and testimony regarding financial and economic loss issues in this matter."  (Ex. 1 to Mot. to Exclude Expert Report & Testimony of Mark Anderson ("Anderson Mot."), ECF No. 70, Expert Report of Mark Anderson ("Anderson Report") ¶ 1& Attachment One, ECF No. 75-1.) [2]  Mr. Craig moves to exclude Mr. Anderson's Report and testimony on the grounds (1) that Mr. Anderson's opinions on "mass market" damages are irrelevant, (2) Mr. Anderson lacks the qualifications to offer opinions in this case, and (3) that his opinions are unreliable.  (Anderson Mot. 2, ECF No. 70.)

Based on the briefing and the hearing, the Court GRANTS both Motions.  The Court finds that Mr. Mancini's testimony improperly states legal conclusions concerning Mr. Craig's alleged breach of his fiduciary obligations.  The Court also finds that Mr. Mancini, as a food broker, lacks the qualifications necessary to offer opinions on whether a consumer product company officer and shareholder breached his fiduciary obligations to that company, and that Mr. Mancini's opinions do not rest on a reliable foundation since they are speculative and since Mr. Mancini is oblivious to key facts in the case.  Moreover, the Court finds that Mr. Anderson would provide unreliable

---

[2] The Report at ECF No. 70-1 is redacted in its entirety so the Court cites to the sealed version at ECF No. 75-1.

testimony because he makes key factual conclusions based primarily on "facts" provided by Mr. Jones, an interested third party..

## **FACTUAL BACKGROUND**

On May 10, 2016, Mr. Craig initiated this lawsuit against Xlear and Mr. Jones. (Compl., ECF No. 2.) Mr. Craig claims that Mr. Jones, "as controlling and majority shareholder, president and chairman of the board of Xlear" breached the fiduciary duties he owed to Mr. Craig "by engaging in bad faith and oppressive tactics in violation of [Mr.] Craig's rights as a minority shareholder." (Id. at 2, ¶ 6.) Mr. Craig further alleges that Mr. Jones "caused Xlear to terminate [his] employment" and "caused Xlear to materially breach its contractual obligations to [him]." (Id.) Mr. Craig asserts a claim for breach of fiduciary duty against Mr. Jones and claims for breach of contract and breach of the covenant of good faith and fair dealing against Xlear. (Id. 9–13, ¶¶ 53–76.)

On July 19, 2016, Xlear and Mr. Jones answered the Complaint, and Xlear asserted counterclaims against Mr. Craig. (Ans. & Countercl., ECF No. 8.) Xlear asserted claims for breach of fiduciary duty and tortious interference with business relationships against Mr. Craig and sought declaratory relief as well. (Id. at 25–27, ¶¶ 59–73.) Xlear asserts, among other things that Mr. Craig

> breached his fiduciary duties to Xlear in numerous ways, including, but not limited to: engaging in misconduct, making grossly negligent management decisions, colluding with brokers; withholding information from Xlear; disseminating Xlear's confidential information to brokers and/or third parties; and concealing communications with brokers.

(Id. at 25–26, ¶ 64.)

On February 3, 2017, Mr. Craig filed a motion seeking summary judgment on his breach of contract claim against Xlear. (Mot. for Summ. J. on 2d Cause of Action for Breach of Contract Against Xlear, ECF No. 12.) On October 25, 2017, the District Judge granted the motion for summary judgment, finding that "there are no disputes of material fact and the Court rules as a matter of law that Xlear materially breached Section 2(a) of the [Restricted Stock Holder's] Agreement when it purported to cancel and void Mr. Craig's shares in April 2016." (Order Granting Mot. for Summ. J. on 2d Cause of Action for Breach of Contract Against Xlear, Inc. 2, ECF No. 54.)

On May 11, 2018, Xlear and Mr. Jones filed a motion for partial summary judgment seeking dismissal of Mr. Craig's claim for breach of fiduciary duty against Mr. Jones. (Mot. for Partial Summ. J., ECF No. 64.) Also on May 11, 2018, Mr. Craig filed another motion for summary judgment, this time seeking dismissal of Xlear's counterclaims. (Mot. for Summ. J. on Xlear, Inc.'s Countercl., ECF No. 67.) Among other things, Mr. Craig argued that Xlear could not, as a matter of law, recover damages stemming from Mr. Craig's alleged failure to introduce its products to the "mass market" in 2012 because "Xlear did not timely disclose this theory of liability or damages" in its Counterclaim or otherwise and because "there is no evidence that [Mr.] Craig caused Xlear to incur these speculative, inchoate damages." (Id. at 31–38.) At the same time, Mr. Craig also filed the Motions to Exclude the reports and testimony of Mr. Mancini and Mr. Anderson currently before the Court. (Mancini Mot., ECF No. 69; Anderson Mot., ECF No. 70.)

On September 6, 2018, the District Judge issued an Order denying both summary judgment motions. (Mem. Decision & Order, ECF No. 99.) Among other

things, the District Judge found Xlear's declaratory judgment counterclaim moot given his prior summary judgment decision but denied Mr. Craig's motion as to the other counterclaims:

> Although Xlear will be required to carry its burden at trial of proving damages for its breach of fiduciary duty and tortious interference with business relations claims, the Court finds that Xlear has provided sufficient facts to create a triable issue of fact with respect to its damages at this stage. Plaintiff's Motion for Summary Judgment is accordingly denied.

(Id. at 2–3.)

## LEGAL STANDARD

The Court has a "gatekeeping obligation" to determine the admissibility of "all expert testimony." Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147 (1999); see also Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 597 (1993) (discussing the judge's "gatekeeping role"). Federal Rule of Evidence 702 governs the admissibility of expert testimony providing:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. "The proponent of expert testimony bears the burden of showing that the testimony is admissible." Conroy v. Vilsack, 707 F.3d 1163, 1168 (10th Cir. 2013)

"A two-part test applies to determine admissibility." Conroy, 707 F.3d at 1168. The Court "must determine 'whether the expert is qualified by knowledge, skill,

experience, training, or education to render an opinion.'" Id. (quoting United States v. Nacchio, 555 F.3d 1234, 1241 (10th Cir. 2009)). Further, the Court "'must satisfy itself that the proposed expert testimony is both reliable and relevant, in that it will assist the trier of fact, before permitting a jury to assess such testimony.'" Id. (quoting United States v. Rodriguez–Felix, 450 F.3d 1117, 1122 (10th Cir. 2006)).

## DISCUSSION

### A. TAD MANCINI

Mr. Mancini summarizes his opinion by stating Mr. Craig "conducted himself in an entirely inappropriate manner with the brokers he was close to and breached his fiduciary obligations." (Mancini Report, ECF No. 74-1 at 9.) Mr. Mancini opines that he "identified numerous instances of Mr. Craig's gross negligence, collusion and/or insubordination (at times, all three at once)," specifically pointing to the 2012 brokerage contract Mr. Craig signed with brokers, his failure to introduce Xlear products to the "mass market," and his relationship with brokers. (Id. at 5–9.) Mr. Craig moves to exclude Mr. Mancini's Report and testimony on four different grounds, arguing (1) that his opinions improperly state legal conclusions, (2) that Mr. Mancini is not qualified to offer opinions in this case, (3) that his opinions lack reliability, and (4) that Mr. Mancini's opinions on "mass market" damages are irrelevant.[3] (Mancini Mot. 1–2, ECF No. 69.) The Court will address each of these arguments.

---

[3] Mr. Craig also argues that the Court should exclude Mr. Mancini's testimony under Federal Rule of Evidence 403. (Mancini Mot. 10–11, ECF No. 69.) However, the Court finds this argument premature at this stage of the case and declines to consider it. See United States v. McCluskey, 954 F. Supp. 2d 1224, 1290 (D.N.M. 2013) ("Federal Rule of Evidence 403 is rarely appropriate as a basis for pretrial exclusion."); In re Paoli R.R. Yard PCB Litig., 916 F.2d 829, 859 (3d Cir. 1990) ("Excluding evidence as being more prejudicial than probative at the pretrial stage is an extreme measure that is rarely necessary, because no harm is

### 1. Mr. Mancini States Improper Legal Conclusions

Mr. Craig argues that Mr. Mancini's opinions are not the proper subject of expert testimony because his "testimony serves no other purpose than to feed legal conclusions to the jury." (Mancini Mot. 3, ECF No. 69.)  Specifically, Mr. Craig asserts that Mr. Mancini "opines that [Mr.] Craig did, in fact, violate the law by breaching his fiduciary duty as an officer of Xlear, and then cherry-picks 'examples' to support his legal conclusion." (Id. at 3–4.)  Xlear and Mr. Jones respond that the Rule applicable to this issue is Federal Rule of Evidence 704, and Mr. Mancini's opinions are proper because "the only opinion by [Mr.] Mancini that is a cause of action in the Counterclaim is breach of fiduciary duty, but the three other categories of wrongdoing on which [Mr.] Mancini opined are not causes of action," and "the terms insubordination and collusion are commonly understood by non-lawyers." (Mem. in Opp'n to Pl.'s Mot. to Exclude Expert Report & Testimony of Tad Mancini ("Mancini Opp'n") 8–9, ECF No. 78.)  Therefore, according to Xlear and Mr. Jones, Mr. "Mancini's opinions concerning insubordination, gross negligence, and collusion do not embrace the ultimate issues in this action." (Id. at 9.)  They concede, however, that Mr. Mancini's "use of the phrase 'breach of fiduciary duty' may be barred by Rule 704(a) . . . since it is identical to a cause of action in the Counterclaim and it is not a phrase commonly understood by laypeople." (Id. at 10.)

Federal Rule of Evidence 704 provides that "[a]n opinion is not objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704(a).  As the Tenth Circuit has held, Rule 704 permits testimony on ultimate factual questions but does not permit an expert

_____

done by admitting it at that stage . . . [A] court cannot fairly ascertain the potential relevance of evidence for Rule 403 purposes until it has a full record relevant to the putatively objectionable evidence.")

to opine on ultimate legal questions.  See Specht v. Jensen, 853 F.2d 805, 808 (10th Cir. 1988).  In Specht, the Tenth Circuit stated that "[t]he basis for this distinction is that testimony on the ultimate factual questions aids the jury in reaching a verdict; testimony which articulates and applies the relevant law, however, circumvents the jury's decision-making function by telling it how to decide the case."  Id.  The Tenth Circuit also noted that a judge has a "duty to set forth the law", and the jury must "apply this law to the evidence."  Id.  Accordingly, the Tenth Circuit held that "when the purpose of testimony is to direct the jury's understanding of the legal standards upon which their verdict must be based, the testimony cannot be allowed" because "[i]n no instance can a witness be permitted to define the law of the case."  Id. at 810; see also Okland Oil Co. v. Conoco Inc., 144 F.3d 1308, 1328 (10th Cir. 1998) (stating that "an expert may not state his or her opinion as to legal standards nor may he or she state legal conclusions drawn by applying the law to the facts"); Pioneer Centres Holding Co. Employee Stock Ownership Plan & Tr. v. Alerus Fin., N.A., 858 F.3d 1324, 1342 (10th Cir. 2017), cert. dismissed sub nom., Pioneer Centres Holding v. Alerus Fin., -- U.S. --, 139 S. Ct. 50 (2018) (stating that expert opinion as to legal standards and conclusions "does 'not aid the jury in making a decision, but rather attempts to substitute [the expert's] judgment for the jury's.'" (quoting Baumann v. Am. Family Mut. Ins. Co., 836 F. Supp. 2d 1196, 1202 (D. Colo. 2011) (alterations in original))); A.E. By & Through Evans v. Indep. Sch. Dist. No. 25, 936 F.2d 472, 476 (10th Cir. 1991) ("[A]n expert may not state legal conclusions drawn by applying the law to the facts."); United States v. Jensen, 608 F.2d 1349, 1356 (10th Cir. 1979) ("[A]n expert witness cannot state legal conclusions by applying law to the facts, passing upon weight or credibility of the evidence, or usurping the province of the jury by telling it what result should be reached.")

The Court finds that Mr. Mancini's Report and testimony consist of improper legal conclusions and excludes them. As an initial matter, Xlear and Mr. Jones misconstrue Mr. Mancini's Report. Mr. Mancini does not opine on four different areas; he opines on only one—breach of fiduciary duty. Mr. Mancini states in his report that Counsel for Xlear and Mr. Jones retained him "to provide an analysis of Brian Craig's ("Mr. Craig's") actions as it relates to his fiduciary obligations while managing Xlear sales and relationship with brokers," and reaches the ultimate conclusion that "Mr. Craig, as an officer and shareholder at Xlear, conducted himself in an entirely inappropriate manner with the brokers he was close to and breached his fiduciary obligations." (Mancini Report, ECF No. 74-1 at 5, 9 (emphasis added); see also Ex. 2 to Mancini Mot., Dep. of Tad Mancini Dep. ("Mancini Dep.") 38:22–39:1, ECF No. 69-2 ("Q. . . . So your opinion is simply that Mr. Craig had a fiduciary duty to Xlear[,] that you've been in a similar industry for 40 plus years and your opinion is he breached his fiduciary duty, right? A. Yes.".) He then provides examples of Mr. Craig's allegedly inappropriate actions and breaches, which "include, but are not limited to" "[a]pparent collusion with brokers on contracts," "[c]omments amounting to apparent insubordination" in communicating with brokers, and "[a]pparent gross negligence in not pursuing the mass market retailers." (Mancini Report, ECF No. 74-1 at 9.) Thus the entire substance of Mr. Mancini's opinion is that Mr. Craig breached his fiduciary obligations to Xlear—which is one of the exact counterclaims that Xlear asserts against him. The alleged "collusion," "insubordination," and "gross negligence" that Mr. Mancini identifies merely reflect examples which, in his opinion, evidence Mr. Craig's breach of his fiduciary obligations.

Mr. Mancini's opinion that Mr. Craig breached his fiduciary obligations constitutes improper expert testimony. If the Court permitted Mr. Mancini to testify that Mr. Craig breached his fiduciary obligations that opinion would usurp the jury's function to determine whether Mr. Craig did in fact breach his fiduciary obligations based on the facts presented during trial. As the Tenth Circuit cautioned in <u>Specht</u>, where an expert opines on an ultimate legal issue "there is a substantial danger [a] jury [may] adopt[] the expert's conclusions rather than making its own decision." 853 F.2d at 809. In addition, even if Mr. Mancini bases his conclusion on his own "definition" of the term, this would confuse the jury. The jury may not know whether to believe the judge's instructions concerning the law over Mr. Mancini's "expert definition," and it may not know how to reconcile the differences between the two. <u>See Specht</u>, 853 F.2d at 810 ("In no instance can a witness be permitted to define the law of the case.") Further, Mr. Mancini's use of other legal terms such as "gross negligence" and "collusion"— which are not even counterclaims in the case and to which he accords his own definitions—would potentially confuse the jury and is improper as well. <u>See In re Motor Fuel Temperature Sales Practices Litig.</u>, No. 06-2582-KHV, 2012 WL 3611010, at *3 (D. Kan. Aug. 22, 2012) (unpublished) (stating that "expert witnesses may not express legal conclusions, <u>i.e.</u> they may not opine whether . . . certain acts and/or omissions are 'legal,' 'authorized,' 'deceptive,' 'unconscionable,' 'misleading' or 'unfair.'")

Simply put, Mr. Mancini's opinions, if offered at trial, would amount to an attempt to direct the jury to conclude that Mr. Craig breached his fiduciary duty, which he may not do. Therefore the Court finds Mr. Mancini's Report and testimony inadmissible and therefore excludes them. The jury will hear the evidence presented during trial concerning Mr. Craig's

conduct and make its own determination—following the District Judge's instructions on the law—as to whether Mr. Craig breached his fiduciary duty to Xlear.

### 2. Mr. Mancini Lacks the Qualifications Necessary to Offer Expert Testimony on Mr. Craig's Purported Breach of His Fiduciary Obligations

Mr. Craig also argues that the Court should exclude Mr. Mancini's Report and testimony "because he has no expertise on the subject of [Mr.] Craig's fiduciary duties and whether he breached them in this case." (Mancini Mot. 5, ECF No. 69.) Specifically, Mr. Craig claims that Mr. "Mancini does not explain how his background as a broker in the food industry leads him to the conclusions he makes in his Report, which are that [Mr.] Craig committed certain factual conduct between 2012 and 2014 in his capacity as an officer of Xlear, and that conduct violated his fiduciary duties." (Id. at 6.) Mr. Craig asserts that Mr. "Mancini does not have any first-hand knowledge of the events that took place during the tenure of [Mr.] Craig's employment" and "does not otherwise have any experience in investigating the type of allegations against [Mr.] Craig, i.e., the conduct and business decisions of an officer on the executive team of a consumer products company." (Id.) Mr. Craig cites deposition testimony indicating that Mr. "Mancini has never been hired by a person or company to" (1) provide outside advice on the terms of a brokerage agreement, (2) independently assess whether an employee, officer, or shareholder's conduct was grossly negligent, or (3) independently assess whether an employee, officer, or shareholder's conduct breached a fiduciary duty to a company. (Id. at 6–7.) He further argues that Mr. Mancini lacks the expertise to make any of these assessments because Mr. Mancini has never served on an executive team or worked for a consumer product company in contract negotiations with third party brokers. (Id. at 7.) He also points out that Mr. Mancini has never been hired to conduct a forensic investigation of alleged fraud and

admitted that he is not qualified to conduct such an investigation.  (Id.)  Finally, Mr. Craig

argues that Mr. Mancini does not have any expertise to opine on what constitutes gross

negligence or breach of fiduciary duties under Utah law and points to deposition testimony

indicating that Mr. Mancini conducted Google searches to understand the definitions of

those terms.  (Id. at 7–8.)

Xlear and Mr. Jones respond that Mr. Craig "oversimplifies and artificially limits [Mr.]

Mancini's expert opinion to the legal definition of a fiduciary duty for purposes of Xlear's

Counterclaim" and that his opinions instead "cover a range of wrongdoing by [Mr. Craig]

which fell below the applicable standard of care—all in the context of his area of expertise–

the obscure food broker industry."  (Mancini Opp'n 4, ECF No. 78.)  They note that the fact

Mr. Mancini has no previous experience as an expert witness does not disqualify him and

that "it would be hard to find an expert in Utah with more experience than [Mr.] Mancini in the

food-brokerage industry."  (Id. at 4–5.)  Further, they assert that while Mr. Mancini has not

served as an officer of a food manufacturer, he is "able to opine on the practices of the

hundreds of manufacturers he has represented as their broker, the thousands of brokerage

contracts he has reviewed and signed, the hundreds of manufacturing vice presidents that

he observed in how they conducted themselves, or the one dozen advisory boards of

manufacturers to which he was appointed."  (Id. at 6.)

An individual is "qualified as an expert by knowledge, skill, experience, training, or

education."  Fed. R. Evid. 702.  As part of its gatekeeping function, the Court must satisfy

itself that the expert "possess[es] 'such skill, experience or knowledge in th[e] particular field

as to make it appear that his opinion would rest on substantial foundation and would tend to

aid the trier of fact in his search for truth.'"  LifeWise Master Funding v. Telebank, 374 F.3d

917, 928 (10th Cir. 2004) (quoting <u>Graham by Graham v. Wyeth Labs.</u>, 906 F.2d 1399, 1408 (10th Cir. 1990)).  Stated another way, the topic(s) on which the expert testifies must fall "within the reasonable confines" of the expert's knowledge and experience.  <u>Ralston v. Smith & Nephew Richards, Inc.</u>, 275 F.3d 965, 970 (10th Cir. 2001) (quoting <u>Compton v. Subaru</u>, 82 F.3d 1513, 1520 (10th Cir. 1996) (quoting <u>Wheeler v. John Deere Co.</u>, 935 F.2d 1090, 1100 (10th Cir. 1991))).  Further, while experience may suffice to qualify an expert, when that is the case, " 'the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.'"  <u>Nacchio</u>, 555 F.3d at 1258 (quoting Fed. R. Evid. 702 advisory committee's note to 2000 amendments).  "'The trial court's gatekeeping function requires more than simply taking the expert's word for it.'"  <u>Id.</u> (internal quotations omitted).

As detailed above, Xlear and Mr. Jones retained Mr. Mancini to opine on whether Mr. Craig breached his fiduciary obligations, and Mr. Mancini concludes that Mr. Craig did in fact breach his fiduciary obligations as an officer and shareholder of Xlear.  Mr. Mancini has not shown that he has the requisite experience to testify on this topic.  As Mr. Craig notes, Mr. Mancini is a "food broker," whose company is "retained by consumer products companies . . . to sell their products within [a] territory."  (Mancini Report, ECF No. 74-1 at 4.)  Mr. Mancini also states that he has served on twelve advisory boards of consumer products companies and retailers and sat on several corporate boards.  (<u>Id.</u>)  However, Mr. Mancini cannot articulate what an officer or shareholder's fiduciary duties are.  (Mancini Dep. 29:16–25, ECF No. 69-2 ("Q.  What research did you do on fiduciary duty?  A.  Just basically Googled what fiduciary duty is and fiduciary responsibility is.  Q. And what were the Google results?

A.  I don't remember exactly, but you've got – you have oversight of financial responsibility in an organization.").)  Further, Mr. Mancini indicates that he does not have any experience working for a consumer products company and has not served as an officer or executive-level employee of such a company.  (See, e.g., Mancini Dep. 12:20–13:1, ECF No. 69-2 ("Q. Have you ever served on the . . . executive team of a company that manufactures goods? . . . . A. No."; id. at 53:16–22, ECF No. 69-2 ("Q. . . . In the thousands of contracts you reference, you were the broker party to those contracts; is that right? A. Correct. Q. You were never the consumer product company? A. Correct.  Unfortunately.").)  In theory, Mr. Mancini could opine on the industry standard for brokerage contracts in the food industry, but he was not retained for that purpose and did not opine on that.  (Mancini Report, ECF No. 74-1.)

While Mr. Mancini undoubtedly has experience as a food broker who interacts with various consumer products companies, this experience does not translate to knowledge and experience concerning the fiduciary duties, responsibilities, and obligations of officers and shareholders within such a company.  Therefore, whether Mr. Craig breached his fiduciary obligations to Xlear, the consumer product company for which he worked and was a shareholder, is not "within the reasonable confines" of Mr. Mancini's experience. Accordingly, the Court finds Mr. Mancini unqualified to offer opinions on whether Mr. Craig breached his fiduciary duty to Xlear and excludes his testimony on this basis as well.

### 3.  Mr. Mancini's Opinions Lack a Reliable Foundation

Mr. Craig also argues that Mr. Mancini employed unreliable methodology because he bases his opinions on a subjective and selective review of deposition testimony that Xlear provided him.  (Mancini Mot. 8–10, ECF No. 69.)  Mr. Craig argues that Mr. Mancini's

"Report is devoid of any acknowledgement that conduct [Mr.] Mancini attributes to [Mr.] Craig is contested," including his conclusion that Mr. "Craig 'changed the key wording' in a letter sent to Xlear's brokers." (Id. at 9.) He further asserts that Mr. Mancini "did nothing to verify any of the testimony he relied on to present Xlear's version of events as fact, nor did he acknowledge that contrary testimony exists." (Id. at 10.) Xlear and Mr. Jones respond that Mr. Mancini reviewed "all of the available deposition testimony" and "knew that many of the issues were disputed" but that "[i]t is appropriate for [him] to rely on certain assumptions" in formulating his opinions. (Mancini Opp'n 11, ECF No. 78.) They also argue that even "shaky" expert testimony is admissible and that while Mr. Mancini's "reliance on disputed sources may make his opinions 'shaky' under [Mr. Craig's] theory of the case, . . . these vulnerabilities should be explored during trial cross-examination and are not proper grounds for the exclusion of [Mr.] Mancini." (Id. at 3–4.)

"[T]he trial judge is assigned the task of insuring that an expert's testimony rests on a reliable foundation . . .." Macsenti v. Becker, 237 F.3d 1223, 1231 (10th Cir. 2001). "[A] district court 'is accorded great latitude in determining how to make Daubert reliability findings.'" Pioneer Centres, 858 F.3d at 1342 (quoting United States v. Velarde, 214 F.3d 1204, 1209 (10th Cir. 2000)). To determine whether an expert's testimony that rests on scientific foundations is sufficiently reliable, a court must assess "whether the reasoning or methodology underlying the testimony is scientifically valid and [] whether that reasoning or methodology properly can be applied to the facts in issue." Daubert, 509 U.S. at 592–93. In some cases, such as this one, "relevant reliability concerns may focus upon personal knowledge or experience" instead. Kumho Tire Co., 526 U.S. at 150. For such testimony to satisfy the reliability standard, it "must be 'based on actual knowledge, and not mere

subjective belief or unsupported speculation.'" Pioneer Centres, 858 F.3d at 1341–42

(quoting Mitchell v. Gencorp., Inc., 165 F.3d 778, 780 (10th Cir. 1999) (internal quotations

omitted)). "When expert opinion 'is not supported by sufficient facts to validate it in the eyes

of the law, or when indisputable record facts contradict or otherwise render the opinion

unreasonable, it cannot support a jury's verdict' and will be excluded." Pioneer Centres, 858

F.3d at 1342 (quoting Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp., 509 U.S. 209,

242 (1993)).

Mr. Mancini's opinions do not rest on a reliable foundation. As Mr. Craig points out,

Mr. Mancini assumes certain key facts in his opinion, adopting particular testimony on

conflicting issues—and therefore making credibility determinations among the witnesses—

and also ignoring key facts. For example, Mr. Mancini states as fact in his Report that "Mr.

Craig changed the key wording in the March 31, 2014 letter to brokers and/ or allowed the

March 31, 2014 letter to brokers to be sent out without the key wording." (Mancini Report,

ECF No. 74-1 at 6.) However, as Mr. Craig points out, conflicting testimony in the record

exists as to whether Mr. Craig actually changed the letter or coordinated the dissemination

of the letter, which Mr. Mancini's Report fails to mention. When questioned on this point, Mr.

Mancini acknowledged the conflicting testimony but admits that he ultimately discounted the

testimony favorable to Mr. Craig because he did not like Mr. Craig's other conduct.

> Q. I really don't like the evidence that Mr. Craig had been having side
> discussions with the brokers, and so I conclude that he changed the key
> wording of the letter and allowed it to go out to the brokers without the key
> wording, right?
> A. Correct.
> Q. And that's the basis for your opinion? You think that he was engaging in
> unacceptable, gross negligent behavior, and because of that you concluded
> that he did that, that he sent that letter out?
> A. Well, it was part of a pattern of several years with the same person.

> Q. Despite the CEO saying, Hey, I may have asked him to actually change
> that language? You just disregarded that?
> A. I didn't disregard it. But to me there's a pattern here that is quite obvious
> with Mr. Craig in protecting brokers at the detriment of his own company.
> Q. And because of your 40 years in this industry, you know that Mr. Craig was
> being untruthful in his deposition testimony about changing the wording of the
> letter?
> A. I just think it was very odd.

(Mancini Dep. 78:3–25, ECF No. 69-2.)

Mr. Mancini's decision to adopt the testimony favorable to Xlear and Mr. Jones and discount the testimony favorable to Mr. Craig oversteps his role as an expert and usurps the role of the jury. Mr. Mancini admits his conclusion that Mr. Craig changed the letter is speculative, indicating that he assumes this conclusion to be true—despite conflicting testimony—given Mr. Craig's other purported conduct which he finds suspect. But an expert may not speculate or make credibility determinations among witnesses. See Pioneer Centres, 858 F.3d at 1341–42 (stating that an expert cannot base his opinion on "'mere subjective belief or unsupported speculation'" (quoting Mitchell, 165 F.3d at 780); Goebel v. Denver & Rio Grande W. R.R. Co., 215 F.3d 1083, 1088 (10th Cir. 2000) ("It is axiomatic that an expert, no matter how good his credentials, is not permitted to speculate."); United States v. Hill, 749 F.3d 1250, 1263 (10th Cir. 2014) (stating that " 'credibility [i]s for determination by the jury,' and '[a]n expert may not go so far as to usurp the exclusive function of the jury to weigh the evidence and determine credibility' " ) (quoting United States v. Samara, 643 F.2d 701, 705 (10th Cir. 1981)). Nor is an expert permitted "to opine on the weight of the facts or take a principal role in sifting, weighing and reciting them for the jury." Rowe v. DPI Specialty Foods, Inc., No. 2:13-CV-00708-DN-EJF, 2015 WL 4949097, at *5 (D. Utah Aug. 19, 2015) (unpublished), aff'd in relevant part, 727 F. App'x 488 (10th Cir. 2018) (unpublished).

The problems with Mr. Mancini's Report do not end there either. Mr. Mancini also admits in his deposition that he did not know certain key facts in the case. Mr. Mancini states as fact in his Report that "[p]erhaps most damaging to Xlear's business was Mr. Craig's lack of focus on getting Xlear product distribution in the mass market . . .." (Mancini Report, ECF No. 74-1 at 6.) However, Mr. Mancini admits in his deposition that he did not know that Mr. Craig made presentations to mass market retailers CVS and Walgreens in 2013, on Xlear's behalf, that those retailers rejected. (See Mancini Dep. 91:24–92:3, ECF No. 69-2 ("Q. . . . [A]re you aware that Mr. Craig made a presentation to two mass retailers, CVS and Walgreens, in 2013 and was rejected? That's a yes or no question. Did you know that fact? A. I did not.").) Courts have found expert testimony unreliable where that testimony ignores key facts. See Conroy, 707 F.3d at 1170 (upholding district court's exclusion of testimony where expert's opinion "could not possibly have rested on a reliable foundation" given that he was "oblivious to … key facts" (internal quotations and alterations omitted)); Leyba v. City of Santa Fe, No. CV 16-185 WPL/LF, 2017 WL 4542886, at *3 (D.N.M. Feb. 14, 2017) (unpublished) (stating that "[w]hen an expert is 'oblivious to [ ] key facts' in a case, his opinion cannot rest on a reliable foundation" and finding because the expert's opinions "rest on improper factual assumptions, they are not reliable and must be excluded" (quoting Conroy, 707 F.3d at 1170)).

For these reasons, the Court finds Mr. Mancini's opinions lack a reliable foundation. Accordingly, Court excludes his testimony on this additional basis as well.

### 4. The Court Declines to Exclude Mr. Mancini's Opinions Concerning "Mass Market" Damages on Relevancy Grounds

Mr. Craig also argues that the opinions in Mr. Mancini's Report concerning Mr. Craig's conduct in bringing Xlear's product to the "mass market" are not relevant, and the

Court should therefore exclude any opinions bearing on "mass market" damages.  (Mancini Mot. 4–5, ECF No. 69.)  As Mr. Craig points out, he filed a motion for summary judgment on Xlear's counterclaims, in which he argues, "Xlear is precluded from relying on any claim that [Mr.] Craig is somehow responsible for the company's alleged delayed entry to mass market . . . because it did not plead or disclose this theory in accordance with the Rules of Civil Procedure."  (Id. at 5.)  Accordingly, Mr. Craig argues that "to the extent the Court finds that Xlear's Mass Market Damages theory is not properly a part of Xlear's claims, the matters set forth in the Mancini Report are not relevant to any other claim, defense or allegation in this lawsuit and must be excluded."  (Id.)  Xlear and Mr. Jones do not directly address this argument, although they claim in response to another argument that Mr. Mancini's opinions support not just Xlear's counterclaims but also their defense to Mr. Craig's claims.  (Mancini Opp'n 5–6, ECF No. 78.)

As Mr. Craig points out, he raised the argument that the Court should exclude "mass market" damages in his motion for summary judgment and, in fact, devoted a significant amount of time to that argument.  (See Mot. for Summ. J. on Xlear, Inc.'s Countercl. 31–38, ECF No. 67.)  However, the District Judge denied the motion for summary judgment in its entirety, finding that "Xlear has provided sufficient facts to create a triable issue of fact with respect to its damages at this stage."  (Mem. Decision & Order 2–3, ECF No. 99.)  Given the District Judge's Order, this argument fails.  However, as noted above, the Court excludes his opinions completely on other grounds.

## B. MARK ANDERSON

Xlear also retained Mark Anderson, a certified public accountant, to offer opinions in this case.  (Anderson Report ¶ 1, ECF No. 75-1; Anderson CV, ECF No. 75-1 at 32.)

Specifically, Mr. Anderson states in his Report that Xlear retained him "to provide opinion and testimony regarding financial and economic loss issues in this matter." ( Anderson Report ¶ 1, ECF No. 75-1.) Mr. Anderson's Report states that "Mr. Craig's alleged misconduct and negligent management decisions include failing to or impeding [Xlear's] introduction of its products to Mass Market in 2012" and that his "mismanagement is further evidenced by the fact that Xlear was not able to take its products into the Mass Market until 2015." (Id., ¶¶ 14–15.) Mr. Anderson provides two theories of damage. First, he contends Xlear lost $2,343,405 at a January 1, 2012 present value by Mr. Craig causing delay of entry in to the mass market for two and a half years. (Id. ¶¶ 19, 28.) Alternatively, Mr. Anderson opines that those same actions cost Xlear two and a half years of patent protection, resulting in a total of $3,248,217 in losses at a January 1, 2012 present value before prejudgment interest. (Id., ¶ 22.) Mr. Craig moves to exclude Mr. Anderson's Report and testimony on three separate grounds: (1) Mr. Anderson's opinions on "mass market" damages are irrelevant; (2) Mr. Anderson is not qualified to offer opinions in this case; and (3) his opinions are unreliable.[4]   (Anderson Mot. 2, ECF No. 70.) The Court will address each of these arguments.

### 1. The Court Declines to Exclude Mr. Anderson's Opinions Concerning "Mass Market" Damages on Relevancy Grounds

Mr. Craig argues Mr. Anderson's opinions concerning "mass market" damages are irrelevant, and the Court should therefore exclude them. (Anderson Mot. 3–4, ECF No. 70.)

---

[4] Mr. Craig also argues that the Court should exclude Mr. Anderson's testimony under Federal Rule of Evidence 403. (Anderson Mot. 10–11, ECF No. 70.) However, as addressed above with respect to Mr. Mancini, the Court finds this argument premature at this stage of the case and declines to consider it. See, e.g., McCluskey, 954 F. Supp. 2d at 1290 ("Federal Rule of Evidence 403 is rarely appropriate as a basis for pretrial exclusion.").

Mr. Craig points out that he filed a motion for summary judgment on Xlear's counterclaims, in which he argues that "Xlear is precluded from relying on any claim that [Mr.] Craig is somehow responsible for the company's alleged delayed entry to mass market . . . because it did not plead or disclose this theory in accordance with the Rules of Civil Procedure." (Id.) Accordingly, Mr. Craig argues that "to the extent the Court finds that Xlear's Mass Market Damages theory is not properly a part of Xlear's claims, the matters set forth in the Anderson Report are not relevant to any other claim, defense or allegation in this lawsuit and must be excluded." (Id. at 4.) Xlear and Mr. Jones argue that Xlear's counterclaim includes allegations pertaining to Mr. Craig's "wrongdoing related to the mass market," and in any event, "Xlear also provided information regarding mass market damages in the course of initial disclosures, supplementation of initial disclosures, fact discovery, and expert discovery." (Mem. in Opp'n to Pl.'s Mot. to Exclude Expert Report & Testimony of Mark Anderson ("Anderson Opp'n") 2–3, ECF No. 80.)

As addressed above, in his motion for summary judgment, Mr. Craig raised the argument that the Court should exclude "mass market" damages from the case. (See Mot. for Summ. J. on Xlear, Inc.'s Countercl. 31–38, ECF No. 67.) However, the District Judge denied that motion in its entirety, finding "Xlear has provided sufficient facts to create a triable issue of fact with respect to its damages at this stage." (Mem. Decision & Order 2–3, ECF No. 99.) Given the District Judge's Order, this argument fails. Therefore, the Court declines to exclude his Report and testimony on that basis.

### 2. Mr. Anderson is Qualified to Offer Expert Testimony on Economic Loss in this Case

Mr. Craig also argues that Mr. Anderson lacks the qualifications to render an opinion on economic loss in this case. (Anderson Mot. 4–7, ECF No. 70.) Specifically,

Mr. Craig argues that Mr. Anderson's "expertise in accounting is insufficient to qualify him to provide the economic loss calculation in his Report, which requires expertise unique to the mass market industry and as to [the] effect of patent protection." (Id. at 7.) Mr. Craig points out that Mr. Anderson admits in his deposition that he has no specific expertise with respect to market penetration, the operation of mass market stores, marketing, consumer behavior, pharmacology, the food industry, patents, and other areas. (Id. at 5–6.) Xlear and Mr. Jones dispute Mr. Craig's characterization of Mr. Anderson's deposition testimony arguing instead that it shows he has experience in many of these areas. (Anderson Opp'n 3–4, ECF No. 80.) They also argue that Mr. "Anderson has sufficient knowledge skill, experience, training, and /or education to perform economic loss calculations," that this case "presents no special circumstances when compared to the numerous other economic loss calculation expert services that [Mr.] Anderson has performed for other clients and in other cases," and that Mr. "Anderson does not need to be a separate expert in 'patents,' 'mass markets,' or the other 10+ topics listed by [Mr. Craig]." (Id. at 4–5.)

As set forth above, expert testimony comes from an individual who is "qualified as an expert by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. As part of its gatekeeping function, the Court must satisfy itself that the expert "possess[es] 'such skill, experience or knowledge in th[e] particular field as to make it appear that his opinion would rest on substantial foundation and would tend to aid the trier of fact in his search for truth.'" LifeWise Master Funding, 374 F.3d at 928 (quoting Graham, 906 F.2d at 1408). Stated another way, the topic(s) on which the expert testifies must fall "within the reasonable

confines" of the expert's knowledge and experience.  Ralston, 275 F.3d at 970 (quoting

Compton, 82 F.3d at 1520 (quoting Wheeler, 935 F.2d at 1100)).

The Court finds Mr. Anderson qualified to render an opinion on economic loss in

this case.  Mr. Anderson is a certified public accountant (CPA), certified fraud examiner

(CFE), accredited in business valuation (ABV), and certified in financial forensics (CFF).

(Anderson CV, ECF No. 75-1 at 32.)  He has testified in court regarding financial and

economic loss in a variety of matters, including personal injury, wrongful termination,

divorce, valuation, and misappropriation of assets.  (Id.)  Further, while Mr. Anderson

admits in his deposition that he is not an expert in the areas of marketing, market

penetration, pharmacology, or the food industry, he indicates that he took courses in

marketing and market penetration and that he has experience in all of these areas, both

from his work in this case and other engagements.  (Ex. 2 to Anderson Mot., Dep. of

Mark Anderson ("Anderson Dep.") 23:11–18, 24:3–12, 25:22–26:4, 26:10–22, 31:14–

32:9, ECF No 70-2.)

Mr. Anderson, who is opining on economic loss, does not have to be an expert in

every imaginable area related to this case to qualify as an expert on economic loss.

See Wood v. Cendant Corp., No. 03-CV-298-TCK-FHM, 2006 WL 6862723, at *2 (N.D.

Okla. Mar. 28, 2006) (unpublished) ("Contrary to Defendants' suggestions, the Court

does not believe either Rule 702 or Daubert would prohibit every expert except one who

is educated in copyright law, the car-rental and hotel reservation business, and the call-

center staffing practices of such businesses.  The Court is not sure such a creature

even exists.").  Mr. Anderson's background, knowledge, and experience demonstrate

that he possesses sufficient qualifications to opine on economic loss suffered by a

business entity.  As Mr. Anderson points out in his deposition, he understands and applies "economic loss principles" in various engagements, even though each case is "unique."  (Anderson Dep. 28:18–24, ECF No. 70-2.)  Further, the Court does not believe that this case presents special circumstances or complexities that would require an expert calculating economic loss to have a particular background or expertise in certain industries to perform those calculations.  Cf. TVT Records v. Island Def Jam Music Grp., 250 F. Supp. 2d 341, 351 (S.D.N.Y. 2003) (finding certified public accountant qualified to opine on market performance of a music album where he also had extensive experience within the music and entertainment industry).  Accordingly, the Court declines to exclude Mr. Anderson's testimony on the basis that he lacks the qualifications needed to offer expert testimony in this case.

### 3.  Mr. Anderson's Opinions Do Not Rest on a Reliable Foundation

Lastly, Mr. Craig argues that Mr. Anderson's opinions are unreliable.  (Anderson Mot. 7–10, ECF No. 70.)  He asserts that Mr. "Anderson relies on the unverified opinions and representations of Xlear—specifically, its majority shareholder and co-defendant in this case, Nathan Jones []— and on selective and unverified data and analyses provided to him by Xlear."  (Id. at 7.)  Further, he argues that Mr. Craig is "oblivious to key facts material to the foundation of his opinion that Xlear would, in fact, have realized mass market profits but for [Mr.] Craig's actions."  (Id. at 9.)  Xlear and Mr. Jones counter that Mr. "Anderson considered the evidence disclosed by the parties in their pleadings and during depositions" and that it is appropriate for him to rely on assumptions that they provided in reaching his opinions in this case.  (Anderson Opp'n 7–8, ECF No. 80.)

As set forth above, "the trial judge is assigned the task of insuring that an expert's testimony rests on a reliable foundation . . .," Macsenti, 237 F.3d at 1231, and "'is accorded great latitude in determining how to make Daubert reliability findings.'" Pioneer Centres, 858 F.3d at 1342 (quoting Velarde, 214 F.3d at 1209). "When expert opinion 'is not supported by sufficient facts to validate it in the eyes of the law, or when indisputable record facts contradict or otherwise render the opinion unreasonable, it cannot support a jury's verdict' and will be excluded." Pioneer Centres, 858 F.3d at 1342 (quoting Brooke Grp. Ltd., 509 U.S. at 242).

The Court finds Mr. Anderson's opinions unreliable. First, while a damages expert may assume that certain facts will be proven, he must make his assumptions clear. See Champagne Metals v. Ken-Mac Metals, Inc., 458 F.3d 1073, 1080 n.4 (10th Cir. 2006) ("Expert testimony that fails to make clear that certain facts the expert describes as true are merely assumed for the purpose of an economic analysis may not assist the trier of fact at all and, instead, may simply result in confusion."). Mr. Anderson's opinion creates problems because he makes key factual conclusions based primarily on his discussions with Mr. Jones, a co-defendant in this case—in particular the length of the harm caused, the relevance of the patents, and the projected growth. (See, e.g., Anderson Dep. 66:11–19, 68:13–19, ECF No. 70-2 (indicating he set a two-and-a-half-year timeframe for damages "based off conversations with Nathan Jones" and the date "[Mr. Jones] felt that those damages would start"); id. at 30:25–31:7 (indicating that he based information concerning expiration of the patents on discussions with Mr. Jones); id. at 89:09-90:10 (indicating his damage calculation assumes the specific grown projections provided by Xlear). However, Mr. Anderson does not indicate that he is assuming these facts as part of his analysis. For

example, Mr. Anderson lists various examples of Mr. Craig's purported "mismanagement" that led to his "failure to take Xlear's products to the Mass Market." (Anderson Report ¶ 14, ECF No. 75-1.) He also concludes that

> Mr. Craig's mismanagement is further evidenced by the fact that Xlear was not able to take its products into the Mass Market until 2015, after his termination. Xlear was unaware of the full extent of Mr. Craig's inappropriate behavior until after his termination. However, it was clear by early 2014 that Mr. Craig had failed to take the Company's products to the Mass Market. Therefore, Xlear hired Bill Robbs to perform this task. It was approximately July 2014 when the Company restarted the process of entering the Mass Market. Mass Market sales started by the end of 2015.

(Id., ¶ 15.) Mr. Anderson estimates the value of this delay at $2,343,405. (Id., ¶ 19.) Mr. Anderson further states that

> [d]ue to the actions of Mr. Craig, the Company lost approximately 2.5 years of Mass Market sales and lost 2.5 years of patent protection. This caused a permanent loss of revenue and income. It also impacted the value of the Company.

(Id. ¶ 16.) Mr. Anderson then ultimately concludes that "the present value of Xlear's lost profits due to the actions of Mr. Craig, including both the delay to selling in the Mass Market and the loss of 2.5 years of patent protection in the Mass Market, is $3,248,217 before prejudgment interest." (Id., ¶ 22.) The Report also states, "[w]ith the assistance of management at Xlear, and in conjunction with industry research, we have prepared a five-year projection of the sales of the Company's mass market nasal spray products." (Id., ¶ 32.)

Mr. Anderson's conclusions as to key facts in this case—lacking indication that they function as assumptions underlying his damages calculation—are improper. These assumptions create the potential for jury confusion since the jury may believe that these "facts" are indeed proven given Mr. Anderson's status as an expert, even though they are

based on the version of events and assumptions provided by interested parties in the case. Or, the jury may believe these "facts" are the result of Mr. Anderson's expert opinion when they are really the opinions of an interested party.  See Champagne Metals, 458 F.3d at 1080 n.4.

> What the Court of Appeals said in footnote 4 [in Champagne Metals], was that an expert's opinion may be properly excluded if he/she assumes some fact based on information from a party (as to damages or otherwise) and fails to make clear that he/she is, in fact, assuming it.  The problem to which the footnote is directed is the potential for jury confusion and the lack of helpfulness of an opinion which appears to be based on the expert's findings or expertise, but is not, and is in fact based on self-serving information provided by an interested party.

Mooring Capital Fund, LLC v. Phoenix Cent., Inc., No. CIV-06-0006-HE, 2009 WL 4263359, at *3 (W.D. Okla. Feb. 12, 2009) (unpublished) (emphasis in original); see also King-Indiana Forge, Inc. v. Millennium Forge, Inc., No. 1:07-CV-00341-SEB-DM, 2009 WL 3187685, at *2 (S.D. Ind. Sept. 29, 2009) (unpublished) ("When an expert's proffered opinion merely parrots information provided to him by a party, that opinion is generally excluded.")  While Mr. Anderson claims in his Report to have done industry research to reach the growth projections in consultation with Xlear, (Anderson Report ¶ 32, ECF No. 75-1), in his deposition he admits that he looked at the company's history and the size of the market but that "at the end of the day, that is the projection that the company provided to me" and he relied  on it.  (Anderson Dep. 91:05–14, ECF No. 75-2.)

While the Court has every reason to believe Mr. Anderson can perform calculations that could assist the trier of fact in determining damages, his report obscures any possibly helpful calculations with unidentified factual and financial assumptions to such a degree that his testimony would serve only to confuse the jury.

For these reasons, the Court finds Mr. Anderson's opinions unreliable and unhelpful to the jury. Champagne Metals, 458 F.3d at 1080 n.4 (stating that "[t]he district court, in performing its gatekeeper function, considers 'whether the evidence or testimony will assist the trier of fact to understand the evidence or to determine a fact in issue'" (quoting States v. Gabaldon, 389 F.3d 1090, 1098 (10th Cir. 2004) (alterations and quotations omitted)). Accordingly, the Court excludes Mr. Anderson's Report and testimony. United States v. Orr, 692 F.3d 1079, 1092 (10th Cir. 2012) ("If an expert's analysis is unreliable, the testimony is inadmissible.")

## CONCLUSION

For the foregoing reasons, the Court GRANTS Mr. Craig's Motion to Exclude the Expert Reports and Testimony of Tad Mancini and Mark Anderson.

DATED this 11th day of March, 2019.

BY THE COURT:

EVELYN J. FURSE
United States Magistrate Judge